

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. |
| v. | ) | |
| | ) | Violations: Title 26, United States |
| STEVEN CORDELL | ) | Code, Sections 7202 and 7203; Title 18, |
| | ) | United States Code, Sections 1343 and |
| | | 1014 |

1:24-cr-00502
Judge John F. Kness
Magistrate Judge Heather K. McShain
RANDOM / CAT.3

## COUNTS ONE THROUGH TEN

**Failure to Account For and Pay Over Trust Fund Taxes, 26 U.S.C. § 7202**

The SPECIAL JUNE 2024 GRAND JURY charges:

1. At times material to this Indictment:

   a. Defendant STEVEN CORDELL ("CORDELL") resided in the Northern District of Illinois.

   b. CORDELL owned and operated Starfish Transportation, Inc. ("Starfish Transportation") in Chicago, Illinois.

   c. Starfish Transportation was a transportation services company that primarily provided bus transportation services to students to and from schools and other after-school-related activities.

   d. Starfish Transportation was incorporated on or about April 5, 2016, in the State of Illinois.

   e. Starfish Transportation had business checking accounts at various financial institutions.

1

f.  The Internal Revenue Service ("IRS") was an agency of the United States Department of the Treasury responsible for administering the tax laws of the United States and collecting taxes owed to the United States.

g.  CORDELL obtained an Employer Identification Number ("EIN") for Starfish Transportation from the IRS in January 2016. An EIN is a unique nine digit number assigned by the IRS to business entities operating in the United States for purposes of identification.

h.  Form 1120, U.S. Corporation Income Tax Return ("Form 1120"), was used by corporations to file annual income tax returns.

### *Employment Taxes*

i.  Under the Internal Revenue Code, employers are required to withhold, truthfully account for, and pay over to the IRS a variety of taxes from employee wages, collectively referred to as "trust fund taxes." These taxes are called trust fund taxes because the employer is required to hold the taxes from employee wages "in trust" and pay them over to the IRS on behalf of the employees. These trust fund taxes include federal income tax withholding ("withholding taxes") and Federal Insurance Contribution Act ("FICA") taxes, as more particularly described below:

i.  Withholding taxes: In general, an employer is required to deduct and withhold federal income taxes on the amount of wages that are actually or constructively paid to its employees, and pay over those withholding taxes to the IRS; and

     ii.  FICA taxes: The FICA tax is comprised of two elements: Social Security tax and Medicare tax. Social Security taxes are used to fund retirement and disability benefits, while Medicare taxes are used to provide health and medical benefits for the aged and disabled. An employer is required to deduct and withhold FICA taxes on the amount of wages that are actually or constructively paid to its employees and pay over those FICA taxes to the IRS.

  j.  In addition to the trust fund taxes that must be withheld from pay, employers are separately required to make their own contributions under FICA for Social Security and Medicare in amounts matching the amounts withheld from their employees' pay for those purposes. Collectively, these five components are commonly referred to as "employment taxes" and are required to be paid quarterly. The employment taxes are due to the IRS no later than the last day of the month following the end of the quarter.

  k.  Employers are required to file, one month after the conclusion of the calendar quarter, a Form 941, Employer's Quarterly Federal Tax Return ("Form 941"), setting forth for that quarter: 1) the total amount of wages paid to employees; 2) any income taxes withheld from employee wages; 3) the total amount of Social Security and Medicare taxes due; and 4) the total tax deposits made. Employers are also required to file a Form 940, Employer's Annual Federal Unemployment (FUTA) Tax Return ("Form 940"). Form 940 is an annual return covering the period from January 1 to December 31. Form 940 is due on or before January 31 of the following year.

1. A person is responsible for collecting, accounting for, and paying over trust fund taxes if he or she has the authority required to exercise significant control over the employer's financial affairs, regardless of whether the individual exercised such control in fact.

2. Beginning in or around July 2018 and continuing until at least in or around July 2024, in the Northern District of Illinois, Eastern Division, and elsewhere,

STEVEN CORDELL,

defendant herein, willfully failed to account for and pay over trust fund taxes due to the IRS, as further described below.

3. CORDELL was a responsible person as the sole owner and operator of Starfish Transportation. CORDELL exercised control over Starfish Transportation's business affairs, including but not limited to the following: negotiating and executing contracts with customers; controlling Starfish Transportation's bank accounts; hiring, supervising, and firing employees for Starfish Transportation; and handling payroll and paying other business expenses.

4. On or about the due dates listed below, CORDELL willfully failed to account for and pay over trust fund taxes that had been withheld from wages paid to Starfish Transportation employees in the amounts listed below, for the quarters listed below in Counts One through Ten, respectively:

| Count | Calendar Quarter | Due Date of Form 941 | Trust Fund Taxes Due and Owing |
|---|---|---|---|
| 1 | 3rd Quarter of 2018 | 10/31/2018 | $19,029.06 |
| 2 | 4th Quarter of 2018 | 1/31/2019 | $32,457.98 |
| 3 | 1st Quarter of 2019 | 4/30/2019 | $28,347.38 |

| 4  | 2nd Quarter of 2019 | 7/31/2019  | $39,829.53 |
|----|---------------------|------------|------------|
| 5  | 3rd Quarter of 2019 | 10/31/2019 | $20,896.98 |
| 6  | 4th Quarter of 2019 | 1/31/2020  | $42,883.38 |
| 7  | 3rd Quarter of 2023 | 10/31/2023 | $57,939.95 |
| 8  | 4th Quarter of 2023 | 1/31/2024  | $99,551.32 |
| 9  | 1st Quarter of 2024 | 4/30/2024  | $51,306.36 |
| 10 | 2nd Quarter of 2024 | 7/31/2024  | $72,277.89 |

In violation of Title 26, United States Code, Section 7202.

## COUNTS ELEVEN AND TWELVE

**Failure to Pay Over Trust Fund Taxes, 26 U.S.C. § 7202**

The SPECIAL JUNE 2024 GRAND JURY further charges:

1. Paragraph 1 through 3 of Counts One Through Ten of this Indictment are realleged and incorporated here.

2. On or about the due dates listed below, CORDELL willfully failed to pay over trust fund taxes that had been withheld from wages paid to Starfish Transportation employees in the amounts listed below, for the quarters listed below in Counts Eleven and Twelve, respectively:

| Count | Calendar Quarter    | Due Date of Form 941 | Trust Fund Taxes Due and Owing |
|-------|---------------------|----------------------|---------------------------------|
| 11    | 1st Quarter of 2023 | 5/1/2023             | $90,396.18                      |
| 12    | 2nd Quarter of 2023 | 7/31/2023            | $104,637.26                     |

In violation of Title 26, United States Code, Section 7202.

## COUNT THIRTEEN

**False Statements on Loan Application, 18 U.S.C. § 1014**

5

The SPECIAL JUNE 2024 GRAND JURY further charges:

1. Paragraph 1.a. through 1.f. of Counts One Through Ten of this Indictment are realleged and incorporated here.

2. BMO Harris Bank was a financial institution with branches in multiple states whose deposits were insured by the Federal Deposit Insurance Corporation.

3. On or about February 12, 2021, in the Northern District of Illinois, Eastern Division, and elsewhere,

STEVEN CORDELL,

defendant herein, knowingly made false statements for the purpose of influencing the action of BMO Harris Bank, a financial institution, in connection with a Paycheck Protection Program loan application submitted to BMO Harris Bank on behalf of Starfish Transportation on or about February 12, 2021, for the loan amount of $247,822.51, in that:

    a. CORDELL submitted an unfiled and false 2019 Form 940, Employer's Annual Federal Unemployment (FUTA) Tax Return, claiming "[t]otal payments to all employees" were $1,189,548.06; when in fact, Starfish Transportation's total payments to all employees were approximately $821,358.17; and

    b. CORDELL submitted false documentation regarding Starfish Transportation's payment of employment taxes for the four quarters in 2019 purportedly showing employment tax balance due/tax owed of $0 for each of the four

6

quarters; when in fact, CORDELL did not pay over any employment taxes that were due to the IRS for the four quarters in 2019.

In violation of Title 18, United States Code, Section 1014.

## COUNTS FOURTEEN AND FIFTEEN

### Wire Fraud, 18 U.S.C. § 1343

The SPECIAL JUNE 2024 GRAND JURY further charges:

1. Paragraph 1.a. through 1.h. of Counts One Through Ten of this Indictment are realleged and incorporated here.

### *COVID-19 Federal Government Relief Program*

a. The United States Small Business Administration ("SBA") was a United States government agency that provided support to small businesses.

b. The Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") was a federal law enacted in or around March 2020 and designed to provide emergency financial assistance to those who suffered economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was a program called the Paycheck Protection Program ("PPP").

c. PPP loans were originated and funded by SBA-approved lenders and guaranteed by the SBA. To obtain a PPP loan from an SBA-approved lender, small businesses submitted electronic applications to SBA-approved lenders such as BMO Harris Bank and First American Bank. Pursuant to the CARES Act, SBA-approved lenders required applicants to provide truthful information, including

7

information about the business' gross receipts, its payroll expenses, and the number of the business' employees, which was material to the lender's approval, terms, and funding of loans. The amount of the PPP loan for which a business was eligible depended on these figures.

        d.      In addition to the PPP loan application, the applicant applying for a PPP loan was required to provide documentation showing their payroll expenses. The supporting documentation included copies of: (1) Forms 941, Employer's Quarterly Federal Tax Return, which report total employees' wages and income tax, Social Security tax, and Medicare tax withheld from employees' wages; (2) Forms 940, Employer's Annual Federal Unemployment (FUTA) Tax Return, which report the business' Federal Unemployment Tax Act tax; and (3) Forms 1120, U.S. Corporation Income Tax Return, which report the business' receipts, expenses and net profit or loss. The SBA and the SBA-approved lenders relied on the accuracy of the information contained in the PPP loan applications and supporting documents in determining whether an applicant was eligible for a PPP loan and the amount of funds the applicant was eligible to receive.

        e.      In addition, the PPP loan application required the applicant to acknowledge the PPP rules and make certain affirmative certifications. One such certification required the applicant to affirm that "[a]ll [PPP] loan proceeds will be used only for business-related purposes[.]"

        f.      The applicant was also required to acknowledge that "I understand that if the funds are knowingly used for unauthorized purposes, the

federal government may hold me legally liable, such as for charges of fraud[,]" and "I further certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects. I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law[.]"

2. Beginning in or around January 2021 and continuing until at least in or around March 2021, in the Northern District of Illinois, Eastern Division, and elsewhere,

STEVEN CORDELL,

defendant herein, knowingly devised, intended to devise, and participated in a scheme to defraud, and to obtain money and property from a federal government relief program by means of materially false and fraudulent pretenses, representations, and promises, as further described below.

3. It was part of the scheme that on or about February 12, 2021, CORDELL knowingly submitted and caused to be submitted a PPP loan application and supporting documents on behalf of Starfish Transportation to BMO Harris Bank seeking a PPP loan for the amount $247,822.51, that contained material misrepresentations including representing that Starfish Transportation's 2019 Form 1120 and Starfish Transportation's 2019 Form 940 had been filed with the IRS.

4. It was further part of the scheme that CORDELL knowingly submitted and caused to be submitted to BMO Harris Bank a PPP loan application and supporting documents indicating that Starfish Transportation's 2019 average

9

monthly payroll was $99,129 and total yearly payroll was $1,189,548.06; when in fact, Starfish Transportation's 2019 average monthly payroll was approximately $68,447 and total yearly payroll was approximately $821,358.17.

5. It was further part of the scheme that CORDELL knowingly submitted and caused to be submitted to BMO Harris Bank a PPP loan application and supporting documentation which falsely represented Starfish Transportation had paid over to the IRS all employment taxes due for the four quarters in 2019 with purported balance due/tax owed of $0 for each of the four quarters. At the time the PPP loan application was submitted, CORDELL, on behalf of Starfish Transportation, had not paid over any employment taxes that were due to the IRS for the four quarters in 2019.

6. It was further part of the scheme that CORDELL's knowing submission of a false and fraudulent PPP loan application and supporting documents caused BMO Harris Bank to disburse PPP loan proceeds in the amount of $247,822.51 to Starfish Transportation's BMO Harris Bank account ending in 1394, controlled by CORDELL, on or about February 18, 2021.

7. It was further part of the scheme that CORDELL misrepresented on the PPP loan application that "[a]ll [PPP] loan proceeds will be used only for business-related purposes[,]" and "[t]he funds will be used to retain workers and maintain payroll; or make payments for mortgage interest, rent, utilities, covered operations expenditures, covered property damage costs, covered supplier costs, and covered worker protection expenditures as specified under the [PPP] Rules[.]" In truth,

CORDELL did not use the loan proceeds solely for these permissible purposes; but instead, used a portion of PPP loan proceeds for personal expenditures including gambling at various casinos throughout the United States.

8.  On or about the dates specified as to each count below, in the Northern District of Illinois, Eastern Division, and elsewhere, CORDELL, for the purpose of executing the above-described scheme, did knowingly cause to be transmitted by means of wire communication in interstate commerce, certain writings and signals, as set for below:

| Counts | Approximate Date | Description |
|---|---|---|
| 14 | February 12, 2021 | Starfish Transportation's PPP loan application submitted by means of interstate wire from the Northern District of Illinois to BMO Harris Bank |
| 15 | February 18, 2021 | Transfer of $247,822.51 in PPP loan proceeds from BMO Harris Bank to Starfish Transportation's BMO Harris Bank account ending in 1394 by means of interstate wire from BMO Harris Bank to the Northern District of Illinois |

In violation of Title 18, United States Code, Section 1343.

## COUNTS SIXTEEN THROUGH EIGHTEEN

### Wire Fraud, 18 U.S.C. § 1343

The SPECIAL JUNE 2024 GRAND JURY further charges:

1.  Paragraph 1.a. through 1.h. of Counts One Through Ten of this Indictment are realleged and incorporated here.

*Coronavirus Economic Relief for Transportation Services Program*

11

a. The Coronavirus Economic Relief for Transportation Services ("CERTS") program was established by the Consolidated Appropriations Act of 2021 and was created to support transportation service providers affected by the COVID-19 pandemic.

b. The CERTS program was administered by the United States Department of the Treasury ("Department of the Treasury"). The Department of the Treasury provided CERTS grant funds to eligible companies that had experienced an annual revenue loss of 25% or more as a result of the COVID-19 pandemic.

c. In a CERTS grant application, the applicant was required to include information such as company name, Taxpayer Identification Number (such as an EIN), 2019 and 2020 revenue figures, amount of other federal funds received in response to the COVID-19 pandemic including Paycheck Protection Program ("PPP") loans, bank account information, and "supporting tax documents."

d. For each CERTS grant application, the difference in total annual revenues reported on the company's 2019 and 2020 tax returns was an important factor in calculating the grant amount. The CERTS grant application also required the applicant to include copies of the company's annual tax returns, such as 2019 and 2020 Forms 1120 and a Form 941, Employer's Quarterly Federal Tax Return ("Form 941"), which sets forth the total amount of income taxes withheld, the total amount of Social Security and Medicare taxes due, and the total tax deposits made during the quarter.

e.  Upon completion of CERTS grant application, the applicant was required to sign a statement attesting to the following: "[t]he Grantee and its undersigned authorized company official acknowledge that a materially false, fictitious, or fraudulent statement (or concealment or omission of a material fact) made in connection with this Grant Agreement may result in administrative remedies, civil penalties, and/or criminal prosecution and penalties."

f.  Once approved, grantees were generally required to use at least 60% of grant funds on payroll costs. For the remainder of grant funds, eligible uses included operating expenses such as certain debt incurred for payroll, COVID-19 protection costs, and other operations and maintenance costs including rent, leases, insurance, among others. Ineligible uses included non-operating expenses such as any dividends or other capital distributions with respect to any ownership interests, and personal expenditures including gambling expenses.

g.  The CERTS grants were classified as taxable income and were required to be reported on the recipient company's corporate tax return.

2.  Beginning in or around June 2021 and continuing until at least in or around December 2021, in the Northern District of Illinois, Eastern Division, and elsewhere,

STEVEN CORDELL,

defendant herein, knowingly devised, intended to devise, and participated in a scheme to defraud, and to obtain money and property from a federal government

13

relief program by means of materially false and fraudulent pretenses, representations, and promises, as further described below.

3. It was part of the scheme that on or about June 21, 2021, CORDELL knowingly submitted and caused to be submitted a CERTS grant application and supporting documents on behalf of Starfish Transportation to the Department of the Treasury seeking CERTS grant funds in the amount of $598,574.21, that contained omission of a material fact and material false statements including misrepresenting that 2019 and 2020 Forms 1120 for Starfish Transportation had been filed with the IRS. At time of CORDELL's CERTS grant application submission, Starfish Transportation's 2019 Form 1120 and 2020 Form 1120 had not been filed with the IRS.

4. It was further part of the scheme that CORDELL knowingly submitted and caused to be submitted to the Department of the Treasury a CERTS grant application and supporting documents containing false statements. Specifically, the 2020 Starfish Transportation Form 1120 falsely stated on Line 1(a) that the business' 2020 gross receipts or sales were $62,167; when in fact, CORDELL knew Starfish Transportation's 2020 gross receipts or sales were at least $250,000.

5. It was further part of the scheme that CORDELL knowingly submitted and caused to be submitted to the Department of the Treasury a CERTS grant application and supporting documents containing false statements. CORDELL falsely indicated Starfish Transportation received one PPP loan in the amount of $166,505.14 from First American Bank, when in fact, Starfish Transportation had

received a second PPP loan in the amount of $247,822.51 from BMO Harris Bank, for a total of $414,327.65 in PPP loan proceeds.

6. It was further part of the scheme that CORDELL's knowing submission of a false and fraudulent CERTS grant application caused the Department of the Treasury to disburse CERTS grant funds in the amount of $598,574.21 to Starfish Transportation's bank accounts, controlled by CORDELL, on or about August 16, 2021, and on or about October 8, 2021.

7. It was further part of the scheme that CORDELL misrepresented on the CERTS grant application that the grant funds would be used solely for eligible operating expenses. In truth, CORDELL did not use the loan proceeds solely for these eligible operating expenses; but instead, used a portion of CERTS grant funds for his personal expenditures including gambling at various casinos throughout the United States.

8. On or about the dates specified as to each count below, in the Northern District of Illinois, Eastern Division, and elsewhere, CORDELL, for the purpose of executing the above-described scheme, did knowingly cause to be transmitted by means of wire communication in interstate commerce, certain writings and signals, as set for below:

| Counts | Approximate Date | Description |
|---|---|---|
| 16 | June 21, 2021 | Starfish Transportation's CERTS grant application submitted by means of interstate wire from the Northern District of Illinois to the Department of the Treasury |
| 17 | August 16, 2021 | Transfer of $469,406 in CERTS grant funds from the Department of the Treasury, by means of interstate wire, to Starfish Transportation's BMO Harris Bank account ending in 1394 in the Northern District of Illinois |

15

| 18 | October 8, 2021 | Transfer of $129,168.21 in CERTS grant funds from the Department of the Treasury, by means of interstate wire, to Starfish Transportation's Republic Bank of Chicago account ending in 0666 in the Northern District of Illinois |

In violation of Title 18, United States Code, Section 1343.

## COUNTS NINETEEN THROUGH TWENTY-THREE

### Failure to File Corporate Income Tax Return, 26 U.S.C. § 7203

The SPECIAL JUNE 2024 GRAND JURY further charges:

1. Paragraph 1.a. through 1.h. of Counts One Through Ten of this Indictment are realleged and incorporated here.

2. During the fiscal years 2018 through 2022, CORDELL owned and operated Starfish Transportation, a corporation not expressly exempt from tax, with its principal place of business in Chicago, Illinois. CORDELL therefore was required by law, after the close of fiscal years ending June 30 from 2018 through 2022, and on or before each September 15 of the following fiscal years, to make an income tax return, for and on behalf of Starfish Transportation, to the IRS, stating specifically the items of the corporation's gross income and the deductions and credits allowed by law. Knowing and believing all of the foregoing, CORDELL did willfully fail, on or about the dates indicated, in the Northern District of Illinois, Eastern Division, to make an income tax return at the time required by law:

| Count | Form 1120, U.S. Corporation Income Tax Return | Fiscal Year ending June 30 | Approximate Due Date |
|---|---|---|---|
| 19 | Starfish Transportation | 2019 | 9/16/2019 |

16

| 20 | Starfish Transportation | 2020 | 9/15/2020 |
| 21 | Starfish Transportation | 2021 | 9/15/2021 |
| 22 | Starfish Transportation | 2022 | 9/15/2022 |
| 23 | Starfish Transportation | 2023 | 9/15/2023 |

All in violation of Title 26, United States Code, Section 7203.

A TRUE BILL

_____
FOREPERSON

_____
STUART GOLDBERG
Acting Deputy Assistant Attorney General for Criminal Matters
Department of Justice, Tax Division

17